## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KASSEM DAKHLALLAH,

      Plaintiff,

vs.

EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS UNION
LLC, EQUIFAX INFORMATION
SERVICES, LLC, and VW CREDIT,
INC. D/B/A AUDI FINANCIAL
SERVICES

      Defendants.

Case No.: 2:25-cv-11663

**JURY TRIAL DEMANDED**

## COMPLAINT

Kassem Dakhlallah ("Plaintiff" or "Mr. Dakhlallah"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and VW Credit, Inc. d/b/a Audi Financial Services ("Audi"); (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American

1

consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested

parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his

knowledge and without reason. Shakespeare said, the loss of one's good
name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec.

36570 (1970)] (emphasis added).

8.    The FCRA also requires CRAs to conduct a reasonable reinvestigation
to determine whether information disputed by consumers is inaccurate and record
the current status of the disputed information, or delete the disputed information,
before the end of the 30-day period beginning on the date on which the CRA receives
the notice of dispute from the consumer. This mandate exists to ensure that consumer
disputes are handled in a timely manner and that inaccurate information contained
within a consumer's credit report is corrected and/or deleted so as to not prevent said
consumer from benefiting from his or her credit and obtaining new credit.

9.    In light of these important findings and purposes, Congress specifically
noted "a need to insure that [CRAs] exercise their grave responsibilities with
fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C.
§ 1681(a)(4).

10.    The FCRA also requires furnishers of information, a creditor or other
third party that provides information about consumer to a CRA, upon notice, to
conduct a reasonable reinvestigation of all disputes with regard to the completeness
or accuracy of any information it provides to the CRAs regarding a consumer and

modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.    Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiff's potential creditors that Plaintiff had failed to make timely payment on his Audi Financial Services, Volkswagen Credit account.

12.    Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.    Plaintiff also brings a claim against Defendant VW Credit, Inc. d/b/a Audi Financial Service for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent

violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

15.    Kassem Dakhlallah ("Plaintiff" or "Mr. Dakhlallah") is a natural person residing in Canton, Michigan, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.    Defendant Equifax Information Services, LLC. ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Michigan, including within this District and can be served through its registered agent at Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

17.    Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.    Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa California 92626, and is authorized to do business in the State of Michigan, including within this District and can be served through its

register agent at CT Corporation System, 330 North Brand Boulevard, Glendale, California 91203.

19.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

20.    Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Michigan, including within this District and can be served through its registered agent at Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

21.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

22.    Defendant VW Credit, Inc. d/b/a Audi Financial Services ("Audi") provides auto financing with its headquarters located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171 and is authorized to do business in the State of Michigan, including within this District and can be served through its registered

agent CSC Lawyers Incorporating Services, 3410 Belle Chase Way, Suite 600, Lansing, Michigan 48911.

23.    VW Credit, Inc. D/b/a Audi Financial Services is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

24.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

26.    The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

27.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit

reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

28.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

29.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

30.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

//

## FACTUAL BACKGROUND

31.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

32.     The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day and also sell credit scores.

33.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

34.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

35.     The Credit Bureau Defendants' consumer reports generally contain the following information:

> (a)     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

(b)     Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c)     Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

(d)     Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

36.    The Credit Bureau Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA by furnishers.

37.    The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like the Credit Bureau Defendants) to make lending decisions.

38.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of

reported debt, payment history, and date of delinquencies contained in the Credit Bureau Defendants' consumer reports.

39.     The information the Credit Bureau Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

40.     FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

41.     The Credit Bureau Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the Credit Bureau Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

42.     The Credit Bureau Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

43.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

44.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit

terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

45. The Credit Bureau Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

46. The Credit Bureau Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

47. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the Credit Bureau Defendants for their inaccurate credit reporting.

48. Thus, the Credit Bureau Defendants are on continued notice of their respective inadequate reporting procedures. Specifically, the Credit Bureau Defendants are on notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

49. The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

**Plaintiff Leased a Vehicle from Audi**

50.    In or around February 2021, Plaintiff leased a vehicle from Audi Farmington Hills with a lease term of thirty-six (36) months. Upon information and belief, the lease started February of 2021 and was scheduled to end February 2024.

51.    Plaintiff made timely payments on his lease every month.

52.    In or around February 2024, Plaintiff and Audi Farmington Hills agreed to extend Plaintiff's lease for a couple of months. Plaintiff also made timely payments during the extended months.

53.    Plaintiff's last payment to Audi Financial Services was on April 4, 2024, with an amount of $1,719.59 with no late charges.

54.    On or about April 10, 2024, the vehicle broke down and Plaintiff had the vehicle towed to Audi of Farmington Hills. Plaintiff completed his lease turn in forms and surrendered the vehicle to Audi of Farmington Hills.

55.    Plaintiff asked the representative of Audi of Farmington Hills if he needed to do anything else to effectively end his lease and was told no. The representative assured him that if any balance remained, he would receive a bill from Audi.

56.    Plaintiff never received a bill, invoice or any request for payment from Audi. Accordingly, Plaintiff believed the issue had been resolved and no balance remained with Audi.

57.     On or about November 7, 2024, Plaintiff received a collection letter from MRS BPO, which indicated that Plaintiff owed $6,403.40 on the Audi Financial Services account he previously had.

58.     Plaintiff was shocked and extremely frustrated because this was the first time he received any communication related to a past due balance owed on his Audi Financial Services account.

59.     Plaintiff was worried about the negative impact this would have on his credit rating.

**Defendants Report Plaintiff's Volkswagen Credit Account
with a Status of Charged-off**

60.     In or around November 1, 2024, Plaintiff obtained copies of his Equifax and Trans Union credit reports. Plaintiff was shocked to see that both reports showed a Volkswagen Credit account, account ending in *3550, opened February 20, 2021, with a status of charged-off and a balance of $6,403 ("Account").

61.     On or about November 7, 2024, after receiving the collection letter from MRS BPO, Plaintiff tried to call Audi Financial Services twice to attempt to resolve the issue but was unable to connect with a representative. Both times Plaintiff received a recording stating that their office is currently closed.

62.     On or around December 10, 2024, Plaintiff sent an email to MRS BPO at MRSCustomerService@mrsassociated.com. In Plaintiff's email he disputed that he owed Audi Financial Services any money.

63.    Plaintiff never received a response from MRS BPO.

64.    On or about December 11, 2024, Plaintiff obtained a copy of his Experian credit report. Upon review of the report, Plaintiff saw that Defendant Experian was also reporting the Account with a status of charged off with a balance of $6,403.

65.    Upon information and belief, Defendant Audi reported to the Credit Bureau Defendants that the account was charged-off with a balance of $6,403.

**Plaintiff's First Dispute to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting**

66.    On or about December 11, 2024, extremely shocked, surprised, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiff disputed the Volkswagen Credit account with each of the Credit Bureau Defendants.

67.    Plaintiff explained that any notation that his Volkswagen credit account was charged-off with a $6,403 balance was inaccurate. A charged-off account means that a creditor no longer believes that a consumer will repay the balance owed every several missed payments, which was not the case with Plaintiff because he never was notified that the Account had a balance owed until it was sent for collection.

68.    Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send him a corrected copy of his credit report.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

69.    On December 20, 2024, Plaintiff's dispute letter to Equifax was delivered.

70.    Upon information and belief, Equifax sent Defendant Audi an automated credit dispute verification ("ACDV") pursuant to Plaintiff's December 2024 dispute to Equifax.

71.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

72.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's December 2024 dispute.

73.    Thereafter, Defendant Equifax failed to correct or delete the charged-off balance of $6,403 notation appearing in Plaintiff's credit file.

74.    Plaintiff never received a response from Equifax.

75.    Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered December 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

//

**Defendant Experian's Unreasonable Dispute Reinvestigation**

76. On December 18, 2024, Plaintiff's dispute letter to Experian was delivered.

77. Upon information and belief, Experian sent Defendant Audi an automated credit dispute verification ("ACDV") pursuant to Plaintiff's December 2024 dispute to Experian.

78. Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

79. Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's December 2024 dispute.

80. Thereafter, Defendant Experian failed to correct or delete the charged-off and $6,403 balance notation appearing in Plaintiff's credit file.

81. Plaintiff received a dispute response from Experian via his Experian account on January 8, 2025, stating that the disputed item has been updated.

82. However, upon review his January 8, 2025 Experian credit report, Plaintiff discovered that no changes had been made to the account except for updating the "late as of" date from November 2024 to January 2025.

83. On February 2, 2025, Plaintiff reviewed his updated Experian report, and the disputed account was still reporting.

18

84.    Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered December 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

85.    On December 17, 2024, Plaintiff's dispute letter to Trans Union was delivered.

86.    Upon information and belief, Trans Union sent Defendant Audi an automated credit dispute verification ("ACDV") pursuant to Plaintiff's December 2024 dispute to Trans Union.

87.    Plaintiff received a response from Trans Union via email on December 27, 2024, stating that they are still waiting for a response from the creditor.

88.    Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

89.    Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's December 2024 dispute.

90.    Thereafter, Defendant Trans Union failed to correct or delete the charged-off $6,403 balance notation appearing in Plaintiff's credit file.

91.     On February 2, 2025, Plaintiff reviewed his updated Trans Union report, and the disputed account was still reporting.

92.     Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered December 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes

93.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

94.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

95.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

96.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

97.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

98.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

99.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

100.   These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

101.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

102.   The data furnishers, like Defendant Audi, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

103.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Audi's Unreasonable Dispute Reinvestigation**

104.   Upon information and belief, in or about December 2024, Defendant Audi received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

105.   Upon information and belief, Defendant Audi failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or about December 2024.

106.   Upon information and belief, Defendant Audi verified the disputed information as accurate to Defendant Equifax in or about December 2024.

107.   Upon information and belief, in or about December 2024, Defendant Audi received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

108.   Upon information and belief, Defendant Audi failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about December 2024.

109.   Upon information and belief, in or about December 2024, Defendant Audi verified the disputed information as accurate to Defendant Experian.

110.   Upon information and belief, in or about December 2024, Defendant Audi received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

111.   Upon information and belief, Defendant Audi failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or about December 2024.

112.   Upon information and belief, in or about December 2024, Defendant Audi verified the disputed information as accurate to Defendant Trans Union.

113.   Defendant Audi violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

## Plaintiff Pays Audi Financial Services Balance in Full

114.   After Plaintiff disputed the Volkswagen Credit account, he received his first statement from Audi Financial Services concerning the amount allegedly owed at the end of his lease.

115.   Upon reviewing the statement, Plaintiff saw multiple mistakes.

116. The Audi statement indicated that Plaintiff returned the vehicle on May 23, 2024, which is almost a month and a half after Plaintiff returned the vehicle.

117. Additionally, Audi stated that Plaintiff owed $1,959.51 from the time he kept the vehicle past the maturity date which is incorrect. At the instruction of the Audi representative, Plaintiff paid an increased monthly payment every month he kept the vehicle beyond the original lease term. This increased monthly payment was supposed to cover the cost of Plaintiff keeping the vehicle for a few extra months.

118. Further, Audi was charging Plaintiff for 43 more days than the vehicle was in his possession.

119. Even though Audi was requesting more money than Plaintiff owed he decided to pay the balance in full to restore his credit.

120. On or about February 6, 2025, Plaintiff paid the Account balance in full.

## Plaintiff's Second Dispute to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting

121. On February 27, 2025, Plaintiff mailed out dispute letters to Equifax, Experian, and Trans Union.

122. In support of his dispute Plaintiff provided a copy of his driver's license, evidence of the vehicle being towed to the Audi dealership on April 10, 2024, proof of payment letter for the past due balance on the Account, and proof of

monthly payments to the Volkswagen account. Plaintiff also included his email address to contact him if additional information was needed.

123. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information and correct the reporting.

**Trans Union's Second Unreasonable Dispute Investigation**

124. On March 4, 2025, Plaintiff's dispute letter to Trans Union was delivered.

125. Upon information and belief, Defendant Trans Union sent Defendant Audi an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2025 dispute to Defendant Trans Union.

126. Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

127. Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's December 2024 and February 2025 disputes.

128. Thereafter, Defendant Trans Union failed to correct or delete the charge-off notation appearing in Plaintiff's credit file.

129. Plaintiff did not receive a response from Trans Union.

130.   On April 18, 2025, Plaintiff obtained his Trans Union credit report, and the Account was still reporting the "Charged-off" notation.

131.   It is materially misleading and therefore inaccurate to report the account status as a "charge off." This notation indicates that Plaintiff is not a responsible debtor, that he does not pay his bills. Neither of which are true.

132.   Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered December 2024 or February 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendant Equifax's Second Unreasonable Reinvestigation

133.   On March 6, 2025, Plaintiff's dispute letter to Equifax was delivered.

134.   Upon information and belief, Defendant Equifax sent Defendant Audi an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2025 dispute to Defendant Equifax.

135.   Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

136.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's December 2024 or February 2025 dispute.

137.   Thereafter, Defendant Equifax failed to correct or delete the Charge-off notation appearing in Plaintiff's credit file.

138.   Plaintiff did not receive a dispute response from Defendant Equifax.

139.   Upon information and belief, Equifax did not correct its reporting of the Account.

140.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered December 2024 or February 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Experian's Unreasonable Reinvestigation**

141.   On March 7, 2025, Plaintiff's dispute letter to Experian was delivered.

142.   Upon information and belief, Defendant Experian sent Defendant Audi an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2025 dispute to Defendant Experian.

143.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

144.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's December 2024 or February 2025 dispute.

145.   Thereafter, Defendant Experian failed to correct or delete the written off notation appearing in Plaintiff's credit file.

146.   On or about April 8, 2025, Plaintiff received Experian's dispute response.

147.   Experian updated the status of the account to reflect that the account has been paid and closed. However, Experian continued to report a $6,403 written off balance.

148.   On April 25, 2025, Plaintiff obtained a copy of his Experian Credit Report. The Account was reported with a Status of Paid, Closed. $6,403 Written Off. The $6,403 was notated as "written off" despite the account having been paid off.

149.   It is materially misleading and therefore inaccurate to report the account as "written off" in any capacity. This notation indicates that Plaintiff is not a responsible debtor and that he does not pay his bills, which is not true.

150.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered December 2024 or February 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Audi's Unreasonable Dispute Reinvestigation**

151. Upon information and belief, in or about December 2024 and/or February 2025, Defendant Audi received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

152. Upon information and belief, Defendant Audi failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or about December 2024 and/or February 2025.

153. Upon information and belief, in or about December 2024 or February 2025, Defendant Audi verified the disputed information as accurate to Defendant Equifax.

154. Upon information and belief, in or about December 2024 and/or February 2025, Defendant Audi received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

155. Upon information and belief, Defendant Audi failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or about December 2024 and/or February 2025.

//

156. Upon information and belief, in or around December 2024 and/or February 2025, Defendant Audi verified the disputed information as accurate to Defendant Experian.

157. Upon information and belief, in or about December 2024 or February 2025, Defendant Audi received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

158. Upon information and belief, Defendant Audi failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or about December 2024 and/or February 2025.

159. Upon information and belief, in or about December 2024 and/or February 2025, Defendant Audi verified the disputed information as accurate to Defendant Trans Union.

160. Defendant Audi violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

161. Plaintiff reasonably believes that Defendant Audi continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff's balance was charged off or written off.

162. Plaintiff reasonably believes that the Credit Bureau Defendants continued to publish that Plaintiff's Account balance was charged and/or written off.

163. It is materially misleading and therefore inaccurate to report the account as "charged off" or "written off." Those notations indicate that Plaintiff is not a responsible debtor and that he doesn't pay his bills which is false.

164. Plaintiff would have paid the Audi debt if he knew it existed.

165. Plaintiff did pay the debt upon receiving the invoice from Audi. Plaintiff even paid more than he believed that he owed.

166. Plaintiff should not be penalized for Audi's poor accounting and record keeping.

167. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

168. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

169. As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely

parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

170.   The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

171.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and

emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of being painted with a false credit history.

## CLAIMS FOR RELIEF

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants**
**Equifax, Experian, and Trans Union)**

172. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

173. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

174. On numerous occasions, Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

175. Defendants Equifax, Experian, and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

176.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

177.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

178.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

179.   As a result of Defendants' Equifax, Experian, and Trans Union conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of being painted with a false credit history.

180.    Defendants Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

181.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendants
### Equifax, Experian, and Trans Union)

182.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

183.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

184.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to

verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

185.   On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Equifax, Experian, and Trans Union and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the charge off balance of $6,403 notation reported about her payment history in relation to Plaintiff's Volkswagen credit account with Defendant VW Credit, Inc.

186.   In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

187.   In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

188.   In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

189.   The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete

the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

190.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

191.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

192.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

//

## COUNT III
## 15 U.S.C. § 1681s-2(b)
## Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
## (Only Claim for Relief Against Defendant Audi)

193.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

194.   Defendant Audi furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

195.   Defendant Audi violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

196.   As a result of Defendant Audi's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money

disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

197. Defendant Audi's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

198. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Audi in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.  Determining that Defendants negligently and/or willfully violated the FCRA;

ii.  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**CONSUMER JUSTICE LAW FIRM PLC**

Dated: June 4, 2025,

By: /s/*Tarek N. Chami*
Tarek N. Chami – MI# P76407
CONSUMER JUSTICE LAW FIRM PLC
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

*Attorneys for Plaintiff,*
*Kassem Dakhlallah*